# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

  Plaintiff,

 v.

TI LU,

  Defendant.

Case No.: CR 18-00604-CJC

ORDER OF DETENTION

  Defendant's motion for review of the Magistrate Judge's detention order and for release is **DENIED**. The Court has considered (i) the nature and circumstances of the offenses charged; (ii) the weight of the evidence against Defendant; (iii) the history and characteristics of Defendant; and (iv) the nature and seriousness of the danger to the community. After considering all of these factors and all of the evidence presented by the parties and the arguments of their counsel, the Court finds by a preponderance of the

-1-

evidence that no condition or combination of conditions will reasonably assure the appearance of Defendant as required.

First, Defendant has a significant incentive to flee to Taiwan. The grand jury returned an indictment charging Defendant and his wife with a sixteen-year-long conspiracy to commit bank fraud and money laundering, as well as identity theft. The Government has marshaled compelling evidence of Defendant's guilt on these charges, including audio and video recordings of Defendant and his wife discussing how they committed the fraud and avoided detection, how they feared law enforcement investigation, and how they laundered the proceeds of their criminal activity. Defendant has also been recorded in the act of committing credit card fraud. If convicted on these serious charges, Defendant faces a very lengthy prison sentence. Indeed, the Government's conservative calculation of Defendant's sentencing guideline range exceeds ten years in prison. Nothing in Defendant's lavish lifestyle has prepared him for any term in prison, let alone one that will last for over a decade.

Second, Defendant has very significant ties to Taiwan. He was born there. He has dual citizenship in the United States and Taiwan and a current Taiwanese passport. He and his wife regularly travel internationally, most frequently to Taiwan. And significantly, Taiwan does not have an extradition treaty with the United States so if he were able to escape to Taiwan, the Government would have no way to compel his return to face the serious charges alleged in the indictment.[1]

---

[1] The Court does not view the fact that Defendant has a teenage daughter as mitigating the risk of flight. To the contrary, it increases the risk. Defendant's wife is in detention and facing the same lengthy prison sentence that Defendant is facing. If Defendant does not flee to Taiwan and he and his wife are convicted, his daughter could very well be separated from Defendant and his wife for over a decade while they serve their lengthy prison sentences.

Third, Defendant likely has the means and resources to abscond to Taiwan and live comfortably there. Defendant has a Taiwanese passport in his birth name, a U.S. passport in the name Jerry Young, and the U.S. passport of his brother, who Defendant closely resembles. Defendant and his wife also have numerous bank accounts and fictitious businesses that they have used to stash their fraudulently acquired wealth. The Government found $500,000 in gold and cash in their security deposit box alone. Defendant and his wife have also invested $1 million with a Florida real estate developer who does not report dividends to the IRS. To date, the Government has seized over $2 million of Defendant and his wife's funds and assets. Some of the investment accounts of Defendant and his wife list the addresses of the owner or purported owner as located in Taiwan. It defies common sense to think that, in light of the significant ties that Defendant has to Taiwan and the considerable efforts that he and his wife have made to hide and launder the proceeds of their fraud, he does not have the means to abscond and the access to funds to support himself after absconding.

Finally, and most troubling, Defendant and his wife revealed in a recorded phone conversation with a confidential witness that they would flee the United States if necessary to evade capture and prosecution for their criminal activity. When Defendant was specifically asked what he would do if law enforcement discovered his criminal activity, Defendant said he could leave the country. Indeed, Defendant kept in his safety deposit box, alongside a stash of gold and cash worth over $500,000, his brother's genuine California driver's license and U.S. passport, even though that brother lives in New York. That safety deposit box was Defendant's emergency kit for absconding. Unsurprisingly, Defendant repeatedly denied the existence of the safety deposit box, apparently so he could use the safety deposit box's contents to abscond if released.

**IT IS THEREFORE ORDERED** that Defendant be detained prior to trial.

**IT IS FURTHER ORDERED** that Defendant be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

**IT IS FURTHER ORDERED** that Defendant be afforded reasonable opportunity for private consultation with counsel.

**IT IS FURTHER ORDERED** that, on order of a Court of the United States or on request of any attorney for the Government, the person in charge of the corrections facility in which Defendant is confined deliver Defendant to a United States marshal for the purpose of an appearance in connection with a court proceeding.

DATED: January 28, 2019

CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE